The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Ismahan Ismail,

    Plaintiff,

v.

Amazon.com,

    Defendant.

Case No. 2:16 CV-01682- JLR

**DECLARATION OF BRADEN PETERSON IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Braden Peterson, depose and say as follows:

1. Beginning in or around February 20, 2015, defendant ("Amazon") employed me as a Crisis Manager in the Global Security Command Center ("GSCC") in Phoenix, Arizona. I reported to Mike Butler, Manager North American Regional Operation Center.

2. As Crisis Manager, I had managerial responsibility for the GSCC Team 4 graveyard shift, which included Ismahan Ismail, a security risk analysist. The team also included security risk analysts Migail Graves, J'Dyn Banks and Saul Chavez, alarm monitoring supervisor Hallie Matteson, and assistant Crisis Manager Kyle Pearson.

3. My initial observation of Team 4 was that there was little structure or communication around breaks and the team was not working in compliance with Amazon's

Declaration of Peterson in Support of Defendant's
Motion for Summary Judgment - 1
(Case No. 2:16 CV-01682JLR)

**Druckman & Blatt, P.C.**
0424 S.W. Iowa Street
Portland, Oregon 97239
(503) 241-5033

break policies or maximum hour work rules. Thus, shortly after assuming managerial responsibility for Team 4, I conducted a staff meeting in which I conveyed to the team my expectation that they were to take three, paid fifteen minute breaks (45 minutes total) and a thirty-minute lunch and be back in their seats with their phones set to available within that time frame. I told them that if they needed time outside of this, to let me know so that I could ensure proper alarm coverage. I also let them know that I expected them to adhere to the maximum twelve-hour work rule.

4. On March 6, 2015, I had my first 1:1 meeting with Ms. Ismail. In this meeting, Ms. Ismail said that she took extended breaks to accommodate her prayer needs. I assumed from this conversation that Ms. Ismail was combining some of her paid breaks to accommodate her prayers.

5. Since assuming responsibility for Team 4, I observed that Ms. Ismail often took 45-minute lunch breaks and paid breaks lasting up to 46 minutes and that she took paid breaks during every four-hour work segment. During breaks, Ms. Ismail often left the premises and I observed her returning with food from local restaurants. Assistant manager Kyle Pearson shared with me that Ms. Ismail had a history of taking breaks regularly extending fifteen to twenty minutes past the provided paid fifteen-minute break.

6. On or around March 12, 2015, I reached out to my manager, who reached out to human resources, and requested guidance concerning how to address the long break times being taken by Ms. Ismail. Human resources business partner Kristen Macklin advised me to have a conversation with Ms. Ismail concerning my expectations around break times and seek to understand the reasons she was taking such long breaks. Exhibit 48 attached hereto is a copy of my March 12, 2015 email correspondence to Mr. Butler concerning Ms. Ismail's breaks.

7. On March 25, 2015, Ms. Ismail worked 20 minutes past the maximum twelve-hours. Exhibit 48A attached is an email I sent to human resources on March 27, 2015 concerning Ms. Ismail's violation of the twelve-hour maximum work rule.

Declaration of Peterson in Support of Defendant's
Motion for Summary Judgment - 2
(Case No. 2:16 CV-01682JLR)

**Druckman & Blatt, P.C.**
0424 S.W. Iowa Street
Portland, Oregon 97239
(503) 241-5033

8. During Ms. Ismail's March 27, 2015 shift, I met with her to discuss the long breaks and lunches she was taking. Ms. Ismail told me that she combines prayers, not breaks as I had assumed, and because she combined prayers, she needed slightly longer breaks. I let her know that was fine, I just needed to understand her needs and make sure we established clear expectations concerning how much time she would be taking. Ms. Ismail agreed that twenty minutes per break and thirty-minute lunch period should be sufficient. Ms. Ismail mentioned that the timing of her breaks changed based on the time of sunset and I told her that it was her discretion when she took her breaks. I also let her know that if this arrangement did not work, she should reach back out to my, or to human resources, whom I would be informing of the arrangement. Exhibit 49 attached hereto is a true and correct copy of my email dated March 27, 2015 to Mr. Butler documenting my conversation with Ms. Ismail.

9. On her very next shift, March 28, 2015, Ms. Ismail took a forty-two-minute lunch period. Exhibit 50 attached hereto is a true and correct copy of an email dated March 29, 2015 that I sent to Mr. Butler documenting Ms. Ismail's failure to timely return from her lunch break.

10. During Ms. Ismail's March 28 shift, I sent her an email reminding her of the parameters she had agreed to concerning her breaks and lunch period. Exhibit 51 attached hereto is a true and correct copy of my email to Ms. Ismail. Shortly after receiving this email, Ms. Ismail asked to meet with me. She let me know that twenty minutes was not sufficient for her breaks; she felt rushed. Ms. Ismail said she needed three, thirty-minute breaks. She agreed a thirty-minute lunch was sufficient. I told her I was fine with this and would convey her request for thirty-minute breaks to human resources. After this meeting, I sent an email, Exhibit 52 attached hereto, to Ms. Ismail confirming our conversation.

11. Ms. Ismail again worked over the twelve-hour maximum work rule on her March 28, 2015 shift. At the start of her shift on March 29, 2015, I again reminded her of the maximum twelve-hour policy. Exhibit 53 attached hereto is a true and correct copy of the instant messaging

Declaration of Peterson in Support of Defendant's
Motion for Summary Judgment - 3
(Case No. 2:16 CV-01682JLR)

**Druckman & Blatt, P.C.**
0424 S.W. Iowa Street
Portland, Oregon 97239
(503) 241-5033

conversation I had with Ms. Ismail on March 29, 2015 concerning the policy.

12. During her March 29, 2015 shift, Ms. Ismail again failed to return timely from her lunch break, taking a forty-two minute lunch. This was the second night in a row following our conversation in which Ms. Ismail had failed to follow the expectations set for the length of her lunch break. I informed Mr. Butler of Ms. Ismail's noncompliance and Mr. Butler reached out to human resources. Exhibit 54 attached is a copy of my March 30, 2015 email to Mr. Butler. On or around March 31, 2015, human resources approved giving Ms. Ismail a documented verbal coaching concerning her long lunch breaks. I delivered the coaching, a true and correct copy of which is attached hereto as Exhibit 55, to Ms. Ismail during her shift on April 2, 2015. Ms. Ismail refused to acknowledge receipt of the coaching by signing it.

13. On or around March 30, 2015, Hallie Matteson told me that Ms. Ismail had referred to her coworkers as a bunch of "lazy asses." Ms. Matteson shared that Ms. Ismail had been on a call and was not able to identify the caller. The call was taking a long time and Mr. Banks came over to assist and told her to just refer the caller to a corporate department. Ms. Ismail ignored his advice and continued to try to assist the caller, but was unsuccessful. After hanging up, Ms. Ismail commented loudly enough for her coworkers to hear that she was sick of people not taking care of things in the department and "we just have a bunch of lazy asses on our team." I informed human resources of Ms. Matteson's complaint.

14. On April 7, 2015, I noticed that Ms. Ismail was at her work station but was not answering alarms. Alarms were going off and Mr. Chavez asked Ms. Ismail if she was going to get them. She said no, and when he asked why, Ms. Ismail said she was busy with something else. I approached and Ms. Ismail told me she was working on something for human resources. I asked if it was possible for her to monitor alarms in addition to what she was working on. She said "no" and then asked loudly so that Ms. Matteson would hear, what Ms. Matteson's purpose was, wasn't Ms. Matteson supposed to cover for her?" I asked Ms. Ismail if she had asked Ms. Matteson to cover and she claimed she had, but Ms. Matteson denied this.

Declaration of Peterson in Support of Defendant's
Motion for Summary Judgment - 4
(Case No. 2:16 CV-01682JLR)

**Druckman & Blatt, P.C.**
0424 S.W. Iowa Street
Portland, Oregon 97239
(503) 241-5033

15. On April 7, 2015, I asked Ms. Ismail if she had completed her individual development plan because we would need it for our 1:1 goal setting meeting scheduled for April 12, 2015. Ms. Ismail told me that she would not meet with me without a human resources representative present because she believed management misrepresented her words. Exhibit 56 attached hereto is a true and correct copy of my April 7, 2015 emails with Ms. Ismail concerning her individual development plan.

16. On April 12, 2015, Levy Bland and I met with Ms. Ismail and Mr. Bland presented Ms. Ismail's annual performance evaluation. After the meeting, Ms. Matteson complained to me that Ms. Ismail had returned to the department and made the following comments: "The Nerve," "Waste of my fucking time," "[t]his place gets funnier and funnier by the minute," Mr. Bland was a "retarded ass," and "this place was pure fucking comedy."

17. On April 21, 2015, Ms. Matteson again complained to me about Ms. Ismail's behavior. Exhibit 57 attached hereto is a true and correct copy of the April 21, 2015 email I received from Ms. Matteson. I informed human resources of Ms. Matteson's complaint.

18. On or around April 20, 2015, Human resources conducted an investigation of Ms. Ismail's unprofessionalism and failure to follow management instructions. Human resource business partners Amanda Berggren and Paige Renner recommended the termination of Ms. Ismail's employment for violating Amazon's standards of conduct. The business line did not adopt this recommendation and instead, a decision was made to issue a final written warning to Ms. Ismail. A true and correct copy of the final written warning, which was delivered to Ms. Ismail on or around May 18, 2015, is attached as Exhibit 58. Because management decided to issue Ms. Ismail a final written warning, management decided not to also issue her the performance improvement plan that Mr. Bland had prepared and forwarded to me on March 31, 2015.

19. On April 26, 2015, Ms. Matteson again complained to me that Ms. Ismail had treated her in a rude manner. Exhibit 59 is a true and correct copy of an email I received from

Declaration of Peterson in Support of Defendant's
Motion for Summary Judgment - 5
(Case No. 2:16 CV-01682JLR)

**Druckman & Blatt, P.C.**
0424 S.W. Iowa Street
Portland, Oregon 97239
(503) 241-5033

1  Ms. Matteson on April 26, 2015. I attempted to meet with Ms. Ismail to seek to understand what
2  had occurred but she refused to meet with me. Exhibit 60 attached hereto is a true and correct
3  copy of an email message I sent to Mr. Butler containing my instant message communications
4  with Ms. Ismail concerning Ms. Matteson's complaint. Ms. Matteson also sent an email, which is
5  attached hereto as Exhibit 61, to Mr. Butler concerning this incident.
6      20.    On May 8, 2015, human resources business partner Amanda Berggren and I met
7  with Ms. Ismail to formalize the accommodation Amazon was providing for her prayer
8  observances. I told Ms. Ismail that her request for three, thirty-minute breaks had been approved
9  but that all time in excess of the paid, fifteen-minute break would be unpaid and she would need
10 to clock-out. Ms. Ismail became irate, hostile and raised her voice toward me. That same day, I
11 documented what occurred in the meeting and Exhibit 62 attached is a true and correct copy of
12 my notes.
13     21.    Exhibits 63 and 64 attached are true and correct copies of emails I sent to Ms.
14 Ismail on May 8, 2015 concerning her time spent on break during that shift and the expectation
15 that she clock-out.
16     22.    Exhibit 65 is a true and correct copy of an email I sent to human resources and
17 Mike Butler on May 8, 2015 concerning the time Ms. Ismail spent on break during her May 8,
18 2015 shift.
19     I declare under penalty of perjury under the laws of the United States of America that the
20 foregoing is true and correct.
21     EXECUTED on this 26th day of February, 2018.

*Braden Peterson* (signature)
Braden Peterson

Declaration of Peterson in Support of Defendant's
Motion for Summary Judgment - 6
(Case No. 2:16 CV-01682JLR)

Druckman & Blatt, P.C.
0424 S.W. Iowa Street
Portland, Oregon 97239
(503) 241-5033

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2018, I served the foregoing **Declaration of Braden Peterson in Support of Defendant's Motion for Summary Judgment** on:

>Timothy J. Feulner
>P.O. Box 40116
>Olympia, Washington 98504

>Attorney for Plaintiff

by **electronic service** through the District Court's electronic filing system on the date set forth below.

Under the laws of the state of Washington and the United States of America, the undersigned hereby declares, under the penalty of perjury, that the foregoing statements are true and correct to the best of my knowledge.

Executed at Portland, Oregon, this 19th day of March, 2018.

>s/Janine C. Blatt
>Janine C. Blatt, WSBA #35508

>Of Attorneys for Defendant

Certificate of Service
(Case No. 2:16 CV-01682JLR)

**Druckman & Blatt, P.C.**
0424 S.W. Iowa Street
Portland, Oregon 97239
(503) 241-5033